**Timothy J. COLLINS,**
**Plaintiff-Appellant,**

v.

**STATE OF ALASKA And Division of Marine Highway Systems, Defendants-Appellees.**

Nos. 85–3874, 85–3915.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1986.

Submission Withdrawn Feb. 21, 1986.

Resubmitted June 26, 1987.

Decided July 28, 1987.

Howard P. Pruzan, Seattle, Wash., for plaintiff-appellant.

James P. Moynihan and John H. Bradbury, Seattle, Wash., for defendants-appellees.

Before WRIGHT, CANBY and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Collins presents us with two interesting questions. The first is whether the Eleventh Amendment bars a seaman's suit against a state employer in federal court. The second is whether a seamen's union can trade its members' traditional maritime remedies for remedies under a workers' compensation system. Because of our answer to the first question, we do not answer the second.

BACKGROUND

In December 1983, Collins was injured working as a seaman aboard the Columbia, an ocean-going ferry owned and operated by the State of Alaska and its Division of Marine Highway Systems (collectively "Alaska"). The Columbia formed part of Alaska's ferry fleet operated between Alaska and Washington, passing through both interstate and international waters.

Collins was a member of the Inlandboatmen's Union of the Pacific, Alaska Region. When Collins was injured, there was a comprehensive collective bargaining agreement between the union and Alaska. The agreement included a provision purporting to waive all of the union members' rights as seamen in exchange for benefits under the Alaska Workers' Compensation Act, Alaska Stat. Ch. 23.30. The applicable section of the CBA provided:

"[i]n lieu of wages, maintenance and cure, remedies for unseaworthiness and other seamen's remedies including Jones Act remedies, employees shall be entitled to Alaska Worker's [sic] Compensation benefits."

After his injury, Collins applied for and received almost $20,000 of workers' compensation benefits. He then sued Alaska for negligence under the Jones Act,[1] and for the seaman's common-law remedies of maintenance and cure and unseaworthiness. Alaska contended that Collins had waived these remedies through his union contract.

PROCEDURAL POSTURE

The district court granted Alaska's motion for summary judgment, holding that national labor policy allowed seamen's unions to determine when it was in their members' best interests to waive statutory and common-law rights in return for contractual rights. 621 F.Supp. 722. The district court did not reach the Eleventh Amendment issue.[2]

---

**1.** 46 U.S.C. § 688 (1982), which provides in relevant part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, ... *and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply....* Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

The reference to "statutes of the United States modifying or extending the ... right[s] ... [of] railway employees" incorporates the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982), which provides in relevant part:

Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the ... employees of such carrier, or by reason of any defect or insufficiency, due to its negli-

gence, in any of its ... engines, appliances, machinery, ... boats, wharves, or other equipment.

....

Under this chapter an action may be brought in a district court of the United States.... The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

*Id.* at §§ 55, 56.

**2.** Because of our disposition of the Eleventh Amendment issue, we do not reach the issue whether a union may waive statutory and common-law rights. We note, however, that a recent decision of this court, *Gardiner v. Sea-Land Service, Inc.,* 786 F.2d 943 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986), would support the district court's ruling as to the waiver of common-law rights. *Gardiner* was decided after the district court's ruling in our case.

We note also that a serious question remains whether the *Gardiner* analysis may be extended to the contractual waiver of Jones Act rights. *See* Section 5 of the FELA, 45 U.S.C. § 55 (1982)

Collins appealed. After oral argument, we submitted the case for decision but later withdrew submission to allow supplemental briefing of the effect of *Welch v. State Dep't of Highways and Public Transp.*, 780 F.2d 1268 (5th Cir.) (en banc), *cert. granted,* — U.S. ——, 107 S.Ct. 58, 93 L.Ed.2d 18 (1986), and withheld submission pending decision by the Supreme Court in *Welch.* Pursuant to *Welch v. State Dep't of Highways and Public Transp.*, — U.S. ——, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), this case is resubmitted.

STANDARD OF REVIEW

We review summary judgments *de novo. Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). We need decide only whether any genuine issues of material fact remain and whether the substantive law was applied correctly. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984). We may affirm on any basis in the record. *Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986).

ANALYSIS

█ As a threshold matter, we must decide whether the Eleventh Amendment [3] bars Collins' claims. *See Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974) ("defense ... partakes of the nature of a jurisdictional bar"). The Eleventh Amendment "bars suits against a State by citizens of that same State." *Papasan v. Allain,* — U.S. ——, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *see also Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355; *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Shaw v. California Dept. of Alcoholic Beverages,* 788 F.2d 600, 603 (9th Cir.1986). "This bar exists whether

the relief sought is legal or equitable." *Papasan,* 106 S.Ct. at 2939 (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984) (*Pennhurst II*)); *accord Shaw,* 788 F.2d at 603. The bar applies also to admiralty cases. *Welch,* — U.S. at ——, 107 S.Ct. at 2945.

The amendment maintains a crucial balance of power between state and federal interests that is central to our system of federalism. *See, e.g., Atasacadero,* 473 U.S. at 242–43, 105 S.Ct. at 3147–48; *Pennhurst II,* 465 U.S. at 99, 104 S.Ct. at 907; *Granados v. Reivitz,* 776 F.2d 180, 182 (7th Cir.1985).

█ The Supreme Court has recognized exceptions to Eleventh Amendment immunity. *Welch,* — U.S. ——, 107 S.Ct. at 2945. A state may waive the immunity and consent to be sued in federal court. *Welch,* — U.S. at ——, 107 S.Ct. at 2945; *Atascadero,* 473 U.S. at 238, 105 S.Ct. at 3145; *Clark v. Barnard,* 108 U.S. 436, 437, 2 S.Ct. 878, 878, 27 L.Ed. 780 (1883). *See also Charley's Taxi Radio Dispatch v. SIDA of Hawaii, Inc.,* 810 F.2d 869, 873 (9th Cir.1987); *Minotti v. Lensink,* 798 F.2d 607, 609 (2d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *Doe by Gonzales v. Maher,* 793 F.2d 1470, 1494 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 142 (1987).

█ The state must, however, give an "unequivocal indication" that it consents to be sued in a federal court. *Charley's Taxi Radio Dispatch,* 810 F.2d at 873. Such an indication may be found where (1) the state expressly consents; (2) a state statute or constitution so provides; or (3) Congress

---

("any contract ... the purpose or intent of which shall be to enable any common carrier to except itself from any liability created by this chapter, shall to that extent be void"); *United States Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 357, 91 S.Ct. 409, 412, 27 L.Ed.2d 456 (1971) "Since the history of [the labor laws] is silent on the abrogation of existing statutory remedies of seamen in the maritime field, we construe it to provide only an optional remedy to them."

3. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

clearly intended to condition the state's participation in a program or activity on the state's waiver of immunity. *Id.* at 873.

■ Even in the absence of a waiver or consent, a state may be sued in federal court when Congress abrogates a state's sovereign immunity pursuant to its powers under section five of the Fourteenth Amendment. *Welch,* — U.S. at —, 107 S.Ct. at 2946; *Atascadero,* 473 U.S. at 238, 105 S.Ct. at 3145; *Charley's Taxi Radio Dispatch,* 810 F.2d at 873; *Maher,* 793 F.2d at 1494. "[C]ongressional exercise of that power should be inferred only when such an intention is expressed 'in unmistakable language in the statute itself.'" *Maher,* 793 F.2d at 1493 (quoting *Atascadero,* 473 U.S. at 243, 105 S.Ct. at 3148).

Here, Alaska did not expressly waive[4] its Eleventh Amendment immunity, but maintained that the amendment barred the action in federal court. Collins argued that, under the express provisions of the Alaska Tort Claims Act,[5] Alaska consented to be sued. But Alaska consented under the Alaska Tort Claims Act only to suit "in superior court." "[F]or a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3147 (quoted in *Maher,* 793 F.2d at 1493); *see also Welch,* — U.S. at —, 107 S.Ct. at 2945.

The more troublesome question is whether Congress has abrogated, or compelled a constructive waiver of, Alaska's immunity.

It is beyond peradventure that, whatever power the Eleventh Amendment withdrew from the federal courts, Congress has the authority under section five of the Fourteenth Amendment to restore it. *See, e.g., Welch,* — U.S. at —, 107 S.Ct. at 2946.

Congress may also have the power to condition the states' enjoyment of Congress's spending power largess on waiver of the states' sovereign immunity in federal courts. *See Atascadero,* 473 U.S. at 246–47, 105 S.Ct. at 3149–50 (discussing constructive waiver of immunity through receipt of federal funds without stating a clear holding as to its validity); *see also Maher,* 793 F.2d at 1494 (iterating a three-part test for resolving immunity questions; the third part testing for constructive waiver by acceptance of federal benefits).

■ Neither the Fourteenth Amendment nor the Spending Clause is implicated here. Indeed, Congress had no hand in fashioning the common-law seamen's remedies invoked by Collins. Absent state waiver, which we have not found, his common-law claims against Alaska are barred in federal court.

Originally, Collins' Jones Act claims presented a more difficult issue. Congress enacted the Jones Act, and the FELA, to which the Jones Act refers, under its Commerce Clause powers. Because this case does not present the question, we need not decide whether Congress has authority under the Commerce Clause to effect a straightforward abrogation of a state's Eleventh Amendment immunity. *Cf. Atas-*

---

**4.** Collins argues that Alaska is collaterally estopped from raising an Eleventh Amendment immunity defense by its unsuccessful litigation in *Cole v. Alaska,* 621 F.Supp. 3 (D. Alaska 1984). Collins did not raise this estoppel argument below and may not raise it now. Even were we to reach the merits of this argument, collateral estoppel is appropriate only if no special circumstance warrants an exception to its application. *Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). One recognized exception concerns "unmixed questions of law" arising in successive actions involving substantially unrelated claims. *Montana,* 440 U.S. at 163, 99 S.Ct. at 978.

Unreflected invocation of collateral estoppel against parties with an ongoing interest in

constitutional issues could freeze doctrine on areas of the law where responsiveness to changing patterns of conduct or social mores is critical.

*Id.; see also United States v. Mendoza,* 464 U.S. 154, 162–64, 104 S.Ct. 568, 573–74, 78 L.Ed.2d 379 (1984) (disapproving the use of collateral estoppel against the federal government).

**5.** The Act reads, in part:

*Actionable claims against the state.* A person or corporation having a … tort claim against the state may bring an action against the state in superior court.

Alaska Stat. § 09.50.250.

*cadero*, 473 U.S. at 253, 105 S.Ct. at 3153 (Brennan, J., dissenting) (abrogation may "perhaps [occur] pursuant to other congressional powers" than the Civil War amendments). Rather, we are asked to decide whether Congress may accomplish the same end circuitously, that is, whether it may require a state to waive constructively its Eleventh Amendment immunity in order to enter a sphere of activity regulated by federal statute.

The Supreme Court, however, has addressed in *Welch* the issue whether by operation of the Eleventh Amendment a state is immune from a Jones Act suit in federal court by a state employee/seaman. It held that the Jones Act did not authorize suits by a state employee/seaman against a state in federal court. *Welch*, — U.S. at ——, 107 S.Ct. at 2947. It follows that Collins, a state employee/seaman, is also barred by the Eleventh Amendment from suing Alaska in federal district court for claims brought under the Jones Act.

AFFIRMED.